FILED
TARRANT COUNTY
3/22/2021 6:28 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 141-324204-21

| | | |
|---|---|---|
| **LORRENA MARQUEZ HAMILTON, JOSE MARQUEZ, JR., and ERIC MARQUEZ, individually and on behalf of their father, JOSE MARQUEZ, deceased,** | ) ) ) ) ) | IN THE DISTRICT COURT |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | _____ JUDICIAL DISTRICT |
| **DALLAS TEXAS HEALTHCARE, LLC and OASIS HEALTHCARE PARTNERS, LLC,** | ) ) ) ) | |
| Defendants. | ) ) | TARRANT COUNTY, TEXAS |

**PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURES**

Plaintiffs Lorrena Marquez Hamilton, Jose Elias Marquez, Jr., and Eric Marquez, individually and on behalf of their father, Jose Marquez, deceased, by and through the undersigned counsel, complains against Defendants Dallas Texas Healthcare, LLC and Oasis Healthcare Partners, LLC (collectively "Defendants") for damages and, in support thereof, shows the Court, as follows:

**I.   DISCOVERY CONTROL PLAN**

1.   Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs intend that discovery in this action to conducted under a level three discovery plan as is detailed in the Texas Rules of Civil Procedure.

**II.   PARTIES**

2.   Plaintiff Lorrena Marquez Hamilton is an individual and resident of Tarrant County, Texas.

3.   Plaintiff Eric Marquez is an individual and resident of Tarrant County, Texas.

4.   Plaintiff Jose Marquez, Jr. is an individual and resident of Wichita County, Texas.

**EXHIBIT "A-1"**

5. Defendant Oasis Healthcare Partners, LLC ("Oasis") may be served with process through its registered agent Vcorp Services, LLC, 1013 Centre Rd., Suite 403-B, Wilmington, Delaware 19805. Oasis owned, managed, operated, supervised, and/or staffed West Side Campus of Care nursing home at which Decedent Jose Marquez ("Decedent" or "Jose") was a resident for all times relevant to the claims asserted herein.

6. Defendant Dallas Texas Healthcare, LLC ("DTHC") may be served with process through its registered agent, Vcorp Services, LLC, 1999 Bryan St., Suite 900, Dallas, Texas 75201. DTHC owned, managed, operated, supervised, and/or staffed West Side Campus of Care nursing home at which Decedent was a resident for all times relevant to the claims asserted herein.

7. To the extent that the above-named Defendants are conducting business pursuant to a trade name or assumed name, then suit is brought against them pursuant to the term of TEX. R. CIV. P. 28 and Plaintiffs hereby demand that upon answering this suit, that Defendants answer in their correct legal and assumed name.

### III.   JURISDICTION AND VENUE

8. Both personal and subject matter jurisdiction are present in this lawsuit. The damages sought herein are in excess of the minimum jurisdictional limits of the Court. Furthermore, all of the causes of action asserted in the case arose in the State of Texas, and all parties to this action are either residents of the State of Texas or conduct business in this State and committed the torts that are the subject of this suit in whole or in part in Texas, as hereafter alleged in greater detail.

9. Venue is proper in this lawsuit because Defendants conducted business in Tarrant County at all relevant times herein and all or a substantial portion of the facts giving rise to this case occurred in Tarrant County, Texas.

## IV.     FACTUAL SUPPORT

10. Defendants operate a nursing home named West Side Campus of Care ("West Side") located at 1950 South Las Vegas Trail in White Settlement, Texas where Decedent was residing at all times relevant to this lawsuit. On March 17, 2020, Decedent died under the medical care and supervision of Defendants. The Plaintiffs in this lawsuit are Decedent's biological children.

11. In 2015, Decedent was diagnosed with early stages of dementia. He had no issues with motor skills and was pleasant in demeanor. In late 2019, doctors recommended that Jose be admitted at Garden Terrace Nursing Home in Fort Worth, Texas due to the deteriorating health of his wife and the inability of his children to quit their employment to provide care. Jose was transferred to West Side, however, because Medicare would only cover Garden Terrace's expenses for thirty days.

12. Early on in his tenure residing at West Side, his daughter, Plaintiff Lorrena Marquez Hamilton ("Hamilton"), noticed Jose suffered bruising and a head injury that was unexplained by Defendants, aside from claiming he "hit his head." Hamilton also noticed that new clothes she purchased to make her father more comfortable in his new environment went missing without explanation. Defendants would also fail to regularly shower, shave, and clean Jose. During the visit prior to his death, Hamilton noticed a large knot on his forehead that caused enough alarm that she documented it with a photo.

13. Sometime around 3:00 a.m. on March 17, 2020, paramedics were called because Jose was allegedly found by employee Michelle Holmes ("Holmes") slumped over at the end of his bed with the room-divider curtain wrapped around his neck. Holmes called a Code Blue but did nothing to untangle Jose from the curtain.

14. Mary Crowley ("Crowley") who worked in a different wing of the facility arrived and reported that Jose's t-shirt had somehow become wrapped or tangled in the curtain and he was hanging from the collar area of his shirt. Crowley cut Jose's shirt from the rear to separate him and began administering aid. Crowley was unable to explain to police how the curtain was attached to Jose's shirt. Crowley did not believe that the incident was a suicide.

15. Police were notified at approximately 3:24 a.m. and dispatch informed them that the White Settlement Fire Department and MedStar personnel sought police assistance because the circumstances surrounding Jose's death appeared suspicious.

16. When police spoke to Holmes, she appeared "flustered and scattered." Holmes reported to police that she was in charge of the wing where Jose resided and had last checked on Jose and his roommate at 1:00 a.m. In contrast to Crowley's explanation, Holmes told police Jose's neck was wrapped with the curtain, and she did not know how it could have caused strangulation. Holmes reported that there was no indication of an altercation or disturbance in Jose's room, despite the violence associated with death by strangulation in circumstances under which Jose's body was allegedly found.

17. Investigating police documented that the curtain was in good condition with no indications of stress in the fabric and it contained no portions that were thin enough to cause the ligature mark on Jose's neck or that it could, by itself, be used for successful asphyxiation. When police located the t-shirt Jose was wearing that had been removed from the room, the neck of the shirt appeared to have been stretched.

18. Another employee informed police that Jose's family had been called and they were permitted access to the facility simply because they identified themselves as family. CPR and other treatments were stopped because Jose was showing no response. According to the police report,

he was pronounced dead at approximately 3:56 a.m.

19. Despite that Defendants claim Jose strangled himself with the room divider curtain, his roommate was never conscious throughout his death, the attempts at his resuscitation, or during the police investigation. The investigating officer even asked whether Jose's roommate, Abdullah Sharif ("Sharif"), was "ok." Sharif and Jose had been roommates for several months without incident. Sharif was heavily medicated throughout the incident and remained unconscious the entire time.

20. The police were informed by Sandi Adair ("Adair"), the supervisor and Assistant Nursing Director for Defendant, that she contacted the Medical Examiner's office. In actuality, Adair did not contact the Medical Examiner but, instead, arranged for Jose's body to be immediately transported to Serenity Funeral Home, a violation of company protocol, in an effort to avoid an immediate or timely autopsy.

21. The Medial Examiner was eventually notified by the funeral home and an autopsy was performed. The toxicology report identified the following drugs present in Jose's system: codeine, morphine, hydrocodone, and trazodone. All of these medications are not only powerful sedatives, but each requires a prescription.

22. Since Jose's death, Defendants have continually denied Hamilton's requests for his medical records.

23. All of the acts and/or omissions alleged in this lawsuit occurred through Defendants' business and contacts in and to the State of Texas through their employees, agents, and/or representatives acting in the State of Texas.

## V.   CAUSES OF ACTION

A.   **Medical Negligence and Gross Negligence**

24.   Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

25.   Defendants engaged in wrongful acts, omissions and/or negligence against Decedent that caused his death for which they are liable. Defendants are healthcare providers that accepted a duty to act as a reasonably prudent healthcare provider would under the same or similar circumstances towards Decedent. Defendants breached the applicable standards of care required for the treatment and safeguarding of Decedent. Defendants' acts and/or omissions constitute negligence that proximately caused the injuries and ultimate death of Decedent for which Plaintiffs sue.

26.   Decedent's injuries and death were proximately caused by Defendants' breach of duty, including the following acts or omissions, whether singularly or cumulatively:

   a. Failing to provide medical care to Decedent according to the acceptable standard of care for a healthcare facility under Texas and federal law;

   b. Failing to use ordinary care in providing healthcare to Decedent;

   c. Failing to provide care to Decedent in a manner that promotes the maintenance or enhancement of his quality of life;

   d. Failing to provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with a comprehensive assessment and plan of care;

   e. Failing to properly medicate Decedent with prescribed medications as directed by a physician;

   f. Failing to properly medicate Decedent with prescribed amounts of medication

and/or with prescribed types of medication as directed by a physician;

g. Failing to implement or follow accepted protocols to monitor Decedent;

h. Failing to implement necessary preventative measures to ensure Decedent's safety;

i. Failing to ensure that sufficient nursing care was provided in quantity and amount to meet the needs of patients, including Decedent;

j. Failing to hire and train qualified nurses and staff to administer to the needs of Decedent and reasonably protect him from injury or death;

k. Failing to report that residents at the facility had been abused and neglected prior to and during Decedent's residency, including Decedent;

l. Failing to adequately assess, evaluate, and supervise nursing personnel and staff to assure that Decedent received proper care in accordance with state law;

m. Engaging in the physical restraint and/or assault of Decedent in such a manner that it resulted in his asphyxiation;

n. Failing to implement reasonable safety protocols and procedures or physical safety devices, such as appropriate breakaway curtains, to avoid Decedent's death;

o. Failing to remove, stow, or properly secure room fixtures or apparatuses, like the divider curtain, to ensure the safety of Decedent;

p. Failing to warn of known dangers regarding the risks associated with room curtains and medicated and/or dementia patients;

q. Failing to timely and properly render emergency aid;

r. Engaging in a systematic process of ensuring that their medical facility maintained the highest acuity levels possible while at the same time providing insufficient capitalization and staff to meet the individual needs of their residence, like

Decedent, and such purposeful undercapitalization and understaffing directly resulted in the failure of Defendants' facility to provide the necessary and basic services to Decedent to prevent his death.

27. Defendants' negligence in one or all of the foregoing ways was the proximate cause of Decedent's death and the injuries sustained by Plaintiffs as a result thereof.

28. The foregoing acts, whether singularly or cumulatively, also constitute gross negligence. Defendants engaged in these acts and/or omissions which, when viewed objectively from its standpoint at the time of their occurrences, involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which it had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Decedent.

B.   **Negligence *Per Se***

29. Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

30. In addition to the blatant disregard for a multitude of basic safety and healthcare standards, Defendants committed negligence *per se* and are liable for breach of state and federal law duties to ensure Decedent would receive all care necessary for him to have the highest possible level of health and be free from abuse, neglect, and exploitation.[1]

31. Defendants were required to "treat each resident with respect and dignity" and promote the "maintenance or enhancement" of Decedent's quality of life.[2] Defendants were required to care for Decedent in a manner and in an environment that promoted the maintenance or enhancement of his quality of life and dignity, and Decedent had the right to receive services

---

[1] 40 TEX. ADMIN. CODE § 19.401; 42 C.F.R. § 483.10.
[2] 42 C.F.R. § 483.10(a). *See, also*, 42 C.F.R. § 483.24.

with reasonable accommodation of his individual needs.[3] This includes Decedent's right to be free from any physical or chemical restraints imposed for purposes of discipline or convenience.[4] This also includes providing Decedent with a safe environment, including supports for safe daily living, including a physical layout that does not pose a safety risk.[5]

32. Defendants are also statutorily required to properly medicate its residents through established medication administration procedures and must refrain from administering unnecessary drugs.[6] All drugs administered by Defendants must be prescribed by a physician or other person legally permitted to prescribe medication.[7] Defendants failed to properly medicate Decedent,[8] resulting in his injuries and death.

33. Defendants are statutorily required to report all injuries of an unknown source and misappropriation of resident property and have such instances investigated.[9] Defendants failed to do so.

34. Defendants were required to have sufficient nursing staff and aides with appropriate competencies and skills sets to assure Decedent's safety and it failed to do so.[10]

35. Defendants failed to comply with the aforementioned statutory and regulatory provisions and engaged in negligence *per se* with regard to Decedent's care, resulting in his injuries and ultimate death. The state and federal legislative purpose and intent is to protect the special class of persons made up of nursing home residents, including Decedent. State and federal regulations were designed to prevent the very harm that Decedent suffered. As a proximate result

---

[3] Tex. Health & Safety Code §§ 242.401, 242.403.
[4] 42 C.F.R. §§ 483.10, 483.12.
[5] *Id.*, §§ 483.10(i), 483.25(d).
[6] Tex. Health & Safety Code, Title 242, Ch. 242N, §§ 242.601-650; 42 C.F.R. § 483.45.
[7] 40 Tex. Admin. Code §§ 19.1506, 19.1508.
[8] *Id.*, at §§ 19.1501-19.1510.
[9] 42 C.F.R. § 483.12.
[10] *Id.*, at § 483.35.

of Defendant's breaches of state and federal law, Decedent suffered severe injuries and ultimately died.

C.     **Wrongful Death**

36.    Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

37.    Plaintiffs bring this wrongful death claim against Defendants pursuant to Texas Civil Practice & Remedies Code §§ 71.001-71.012

38.    Plaintiffs are Decedent's biological children and are statutory beneficiaries of Decedent. Plaintiffs relied on Decedent for love, companionship, and comfort.

39.    Defendant's wrongful acts as alleged herein caused Decedent to endure pain and suffering and to die.

40.    As a direct and proximate result of Defendants' negligence, negligence *per se*, and gross negligence, Decedent sustained fatal injuries for which Defendant is liable to Plaintiffs.

D.     **Survival Statute Violation**

41.    Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

42.    Plaintiffs bring this survival action claim against Defendants pursuant to Texas Civil Practice & Remedies Code §§ 71.021-71.022.

43.    Decedent had a cause of action for personal injuries before he died and would have been entitled to bring an action for his injuries had he lived.

44.    Defendants' wrongful acts as described herein caused the death of Decedent.

E.     **Vicarious Liability**

45.    Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

46.    Defendants are vicariously liable for the negligence of their employees and personnel employed and/or supervised by Defendants, including all staff, departments, borrowed

employees, borrowed servants, physicians, nurses, aids, technicians, or other personnel who are Defendants' actual employees, agents, apparent agents, ostensible agents, or agents by estoppel. Furthermore, Plaintiff alleges that Defendants are responsible for Decedent's suffering and death under the doctrines of respondeat superior, corporate negligence, agency, and as a result of violations of non-delegable duties.

## VI. DAMAGES

47. Plaintiffs re-allege the paragraphs above and below as if set out in full herein.

48. Plaintiffs seek all damages permitted pursuant to the Texas Wrongful Death Statute, codified at TEX. CIV. PRAC. & REM. CODE § 71.002, *et seq*. and the Texas Survival Statute codified at TEX. CIV. PRAC. & REM. CODE § 71.021, *et seq*.

49. Plaintiff further seeks all damages proximately caused by Defendants' acts and omissions as alleged herein, including:

   a. actual damages, including funeral and burial expenses;

   b. damages for Decedent's pain and suffering, mental anguish, and/or emotional pain prior to his death;

   c. compensatory damages to Plaintiffs for their physical pain, suffering, mental or emotional pain or anguish, loss of consortium, companionship, society, enjoyment of life, and all other non-pecuniary losses of any kind in the past and future;

   d. loss of comfort, care, and companionship;

   e. all other damages naturally and/or incidentally flowing from Defendants' conduct and/or omissions forming the basis of this lawsuit;

   f. exemplary damages and punitive damages in the survival action and gross negligence;

    g.   pre-judgment interest; and

    h.   post-judgment interest.

50.    Plaintiffs seek unliquidated damages.

## VII.    JURY DEMAND

51.    Plaintiffs request that a jury be convened to try the fact issues in this action.

## VIII.    RULE 47 STATEMENT

52.    Pursuant to Tex. R. Civ. P. 47, Plaintiffs seek monetary relief in excess of $1,000,000 and a demand for judgment for all other relief to which the parties deem themselves entitled.

## IX.    REQUEST FOR DISCLOSURES

53.    Plaintiffs request that Defendants disclose within 50 days of service of this request the information or material described in Rule 194.2.

## X.    CONDITION PRECEDENT

54.    Plaintiffs would show that they have complied with the provisions set forth in Tex. Civ. Prac. & Rem. Code § 74.051 – Defendants have been notified of Plaintiffs' claims at least 60 days prior to the filing and/or service of this lawsuit.

## XI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against Defendants for all the aforesaid damages, including punitive damages, costs for this action, reasonable attorneys' fees and any and all other relief to which they may be entitled both at law and in equity.

          Respectfully submitted,

          The Witherspoon Law Group, PLLC

/s/ Nuru Witherspoon
Nuru Witherspoon
State Bar No. 24039244
witherspoon@twlglawyers.com
Emily Taylor
State Bar No. 24046951
taylor@twlglawyers.com
5565 Deer Creek, Unit A
Dallas, Texas 75228
Tel: (214) 773-1133
Fax: (972) 696-9982

**ATTORNEYS FOR PLAINTIFF**