IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LORRENA MARQUEZ HAMILTON, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  4:21-cv-00582-O |
| DALLAS TEXAS HEALTHCARE, LLC, et al., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motion for Summary Judgment (ECF Nos. 37–39), filed December 13, 2021; Plaintiffs' Response (ECF Nos. 40–42), filed January 3, 2022; and Defendants' Reply (ECF No. 43–44), filed January 18, 2022. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the motion for summary judgment.

I.  BACKGROUND

A.  Overview

Plaintiffs are Decedent Jose Marquez, Sr.'s widow and three adult children.[1] Defendants are Settlement Healthcare, LLC d/b/a Westside Campus of Care and Oasis HCP 2, LLC.[2] Decedent resided at the Westside Campus of Care nursing facility from December 2019 until March 17, 2020.[3] An employee found Decedent deceased in his shared room around 3:00 a.m., over an hour after nurses has last checked on him.[4] He was pronounced dead at 3:56 a.m.[5] Cause of death was

---

[1] Second Amended Compl. ¶ 9, ECF No. 22.
[2] *Id.*
[3] *Id.* at ¶ 12.
[4] *Id.*
[5] *Id.* at ¶ 17.

determined to be strangulation, resulting from Decedent's shirt becoming entangled with a privacy curtain.[6] Plaintiffs then sued Defendants, alleging various pre-mortem systemic abuse causes of action, as well as negligent supervision and response, resulting in Decedent's death.[7]

### B. Decedent's Condition and Care

Decedent was diagnosed with dementia in 2015.[8] In late 2019, pursuant to doctors' recommendations, Decedent was admitted to Garden Terrace Nursing Home in Fort Worth, then transferred to West Side.[9] Staff at West Side described Decedent as a fall risk who had a history of behavior disturbances and delusions.[10] Defendants' medical records and testimony further reflected that Decedent was known to wander, was suffering from insomnia, and was taking multiple medications with known side effects such as hallucinations and delusions.[11] Decedent's autopsy toxicology report showed traces of morphine, which he was not prescribed.[12] Morphine is also known to cause hallucinations.[13]

The records further reflect that as of March 10, 2021, Decedent was known to have fallen five times in the months he had been under Defendants' care.[14] Three of these falls resulted in injuries.[15] Nurses working on his floor knew of these occurrences, and the risk of future falls, at least in part.[16] This knowledge led to a recommendation that Decedent be moved closer to the nursing stations.[17] Employees recommended staff conduct more frequent checks on Decedent than

---

[6] *Id.* at ¶ 15.
[7] *See* Second Amended Compl., ECF No. 22.
[8] *Id.* at ¶ 10.
[9] *Id.*
[10] Response App., 12, 42–43, 49–50, 56–58, 85–105, ECF No. 42.
[11] *Id.* at 52–53.
[12] *Id.* at 54
[13] *Id.*
[14] *Id.* at 59.
[15] *Id.*
[16] *Id.* at 59, 63 (Nurse stated that "he was such a high fall risk and he did have such a recent fall.").
[17] *Id.* at 64–65.

other residents, but no official rule was adopted requiring increased frequency of checks, and this recommendation was not always abided by.[18]

### C. Plaintiffs' Claims

Plaintiffs seek to recover damages for his death and for alleged substandard care Decedent received during his time as a patient at Westside Campus of Care. Specifically, Plaintiffs' amended complaint makes the following claims against Defendants: (1) Medical Negligence and Gross Negligence; (2) Negligence Per Se; (3) Wrongful Death pursuant to Texas Civil Practice & Remedies Code §§ 71.001-71.012; (4) Survival Statute Violation pursuant to Texas Civil Practice & Remedies Code §§ 71.021-71.022; and (5) Vicarious Liability. These claims can be divided into two categories: (1) Decedent was the victim of systemic abuse, mistreatment, theft, inappropriate restraint, and over-medication; and (2) Defendants' failure to adequately monitor or respond to Decedent on March 17, 2020, wrongfully caused his death. The wrongful death and survival causes of action are healthcare claims based on theories of medical negligence and negligence per se. Defendants moved for summary judgment on all claims, and the parties briefed the issues.

## II.     LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

[18] *Id*. at 33–34, 59–60, 86–105.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

### III.   ANALYSIS

#### A.   Claims Arising from Decedent's Death

Plaintiffs claim that Decedent's death resulted from Defendant's failure to adequately supervise and implement safety precautions. They assert survival and wrongful death claims, alleging negligence, negligence per se, and gross negligence. The Texas Legislature set special rules governing "healthcare liability claims." Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (2021). The parties agree that Plaintiffs claims fit the statutory definition of "healthcare liability claims," and that those special rules apply.

To succeed on a healthcare liability claim,

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014). Under Texas law, the relevant expert testimony is generally required to prove each element.[19] *See W.C. LaRock, D.C., P.C. v. Smith*, 310 S.W.3d 48, 56 (Tex. App. – El Paso 2010, no pet.).

### 1. Expert Testimony

Defendants argue they are entitled to summary judgment because "Plaintiffs cannot produce evidence to create a genuine issue of material fact as to the standard of care, breach, or causation on either set of allegations." Mot. 6, ECF No. 38. The Court disagrees and addresses each of Defendants' arguments below.

As a preliminary issue, Defendants argue that Plaintiffs have failed to present any proper summary judgment evidence because they did not offer any testimony from Dr. Messmer in the form of an affidavit or declaration. Reply 10, ECF No. 44. Instead, Plaintiffs rely on an unsworn expert. *Id.* Defendants argue "it is well settled that '[u]nsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56.'" *Id.* at 10 (quoting *Provident Life and Accident Ins. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001)). But the Fifth Circuit has held a party may "support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). The Court has previously determined Dr. Messmer's testimony is admissible. *See* Order, ECF No. 61. Therefore, Plaintiffs have provided summary judgment

---

[19] Plaintiffs argue this requirement directly conflicts with federal law and is therefore superseded. Resp. 8, ECF No. 41 (citing *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 294, 296–298 (5th Cir. 2016)). Because the Court finds the supplemental report is sufficient, there is no need to address this issue.

evidence for the Court to consider. Plaintiffs' expert reports, however, must provide sufficient testimony to establish a standard of care, breach of that standard, and causation to survive summary judgment.

Regarding standard of care, the supplemental expert report states Decedent "should have been in a room within visual range of the nurses station and observed every 15 minutes. Plus, all possible obstructions such as the curtain should have been moved away or properly stowed to prevent Mr. Marquez from getting twisted in the curtain." Supp. Report App. 11, ECF No. 49. Dr. Messmer's report included medical articles articulating this standard. *See id.* at 12–17. The Court finds this is sufficient to establish a standard of care for purposes of summary judgment. The Court similarly finds that Plaintiffs have provided adequate evidence of a breach of that standard to survive summary judgment through Dr. Messmer's report that Defendants failed to implement these measures. *Id.*

Lastly, the Court finds the supplemental expert report adequately establishes evidence of causation to survive summary judgment. "The ultimate standard on causation is whether the plaintiff proved, by a preponderance of the evidence, that 'the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred.'" *W.C. LaRock, D.C., P.C.*, 310 S.W.3d at 56 (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993)). "[A] plaintiff's expert must establish a causal connection between her injury and the negligence of the defendant based upon 'reasonable medical probability,' not mere conjecture, speculation, or possibility." *Id.* (citation omitted). Dr. Messmer states that Decedent's death was a result of "failure to secure a safe environment by not clearing obstructions, not observing his safety frequently enough, and not recognizing the high risk of serious injury or death even with a history of prior falls with injuries, advanced dementia, and

administration of sedating medications." Supp. Report App. 11, ECF No. 49. This is sufficient evidence that would allow a reasonable jury to find causation.

### 2. Gross Negligence

Defendants additionally argue Plaintiffs' gross negligence claims must fail because Plaintiffs have failed to produce sufficient evidence to raise a fact issue. "Gross negligence is defined as an entire want of care, which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it." *Aguirre v. Vasquez*, 225 S.W.3d 744, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 640 (Tex. 1995)).

> To establish gross negligence, a plaintiff must prove by clear and convincing evidence (1) that, when viewed objectively, the defendant's acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) that the defendant had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

*Matbon, Inc. v. Gries*, 288 S.W.3d 471, 488 (Tex. App.—Eastland 2009) (citing Tex. Civ. Prac. & Rem. Code § 41.001(11)).

*Objective:* "Viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others." *Gries*, 288 S.W.3d at 488. As discussed above, Dr. Messmer's expert report details a standard of care and a departure from that standard. For example, Defendants do not allow the use of bed alarms and, despite knowing Decedent was a fall risk, left Decedent unattended for over an hour. This evidence is sufficient for a reasonable jury to conclude that Defendants departed from the ordinary standard of care, creating an extreme risk of harm.

*Subjective:* "The subjective component requires the defendant have 'actual, subjective awareness' of the extreme risk involved, but nevertheless proceed in 'conscious indifference to the

rights, safety, or welfare of others.'" *Aguirre*, 225 S.W.3d at 754 (quoting *Moriel*, 879 S.W.2d at 23). "Actual awareness means that the defendant knew about the peril, but his acts or omissions demonstrated that he did not care." *Id.* (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). "Awareness of an extreme risk does not require proof that the defendant anticipated the precise manner in which the injury would occur or be able to identify to whom the injury would befall." *Telesis / Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 245 (Tex. App.—El Paso 2015, no pet.).

Deposition testimony discussed above shows that the staff was aware Decedent was a fall risk, was prone to wander, and was on medication that could cause disorientation. Thus, a reasonable jury could conclude this showed a subjective awareness of the risk. Yet no further safety measures were mandated. This evidence could lead a reasonable jury to conclude that Defendants' conduct created an extreme degree of risk and that Defendants knew of the risk but did not alter their behavior.

*Corporate Defendants:* Finally, Defendants argue that even if Plaintiffs have shown sufficient objective and subjective evidence, the negligence cannot be attributed to the corporate defendants. Mot. 17, ECF No. 38. The Texas Supreme Court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation. "A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent." *Mobil Oil*, 968 S.W.2d at 921. The record reflects that decisions, such as the decision to not utilize bed alarms, were made at a corporate—rather than individual agent—level. *See* Resp. App. 125–127, ECF No. 42. Thus, a reasonable jury could find the corporate Defendants authorized or ratified an agent's

gross negligence. The Court thus **DENIES** Defendants' summary judgment motion as to causes of action stemming from Decedent's death.

### B. Claims Arising Independent of Decedent's Death

In Plaintiffs' Amended Complaint, Plaintiffs also allege Decedent was the victim of systemic mistreatment. Defendants seek summary judgment, arguing there is no evidence to support these claims. These claims also require expert testimony because they arise out of medical liability claims. Neither Plaintiffs' expert report nor supplemental report reference these claims. *See* Supp. Report App., ECF No. 49. Plaintiffs fail to address Defendants' arguments, or even mention these claims in their response. *See* Resp., ECF No 41. Thus, there is no issue of fact for a jury, and Defendants' Motion for Summary Judgment on Plaintiffs' claims not stemming from Decedent's death is **GRANTED.**

### IV. CONCLUSION

The Court **GRANTS** Defendants summary judgment motion as to any claim not stemming from Decedent's death and **DISMISSES** those claims. The Court **DENIES** Defendants' summary judgment motion to the remainder of the claims.

**SO ORDERED** this **31st day** of **March, 2022**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE